# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **MICHELLE DOTSON, BRIDGETTE LOTT AND REGINOLD STEPHENS** Individually, **RONALD DOTSON,** Individually and Personal Representative of the Estate of **JANICE DOTSON-STEPHENS,** deceased**,** | § § § | |
| **Plaintiffs,** | § | **CAUSE NO.: SA-19-CV-00151-XR** |
| | § | |
| **V.** | § | |
| | § | |
| **BEXAR COUNTY, SHERIFF JAVIER SALAZAR,** Individually and as an agent and/or employee of Bexar County Sheriff's Office, **"UNKNOWN/UNNAMED" OFFICERS/EMPLOYEES OF BEXAR COUNTY SHERIFF'S OFFICE, BEXAR COUNTY HOSPITAL DISTRICT d/b/a UNIVERSITY HEALTH SYSTEMS, "UNKNOWN/UNNAMED" OFFICERS/ EMPLOYEES OF BEXAR COUNTY HOSPITAL DISTRICT d/b/a UNIVERSITY HEALTH SYSTEMS, BEXAR COUNTY PRETRIAL SERVICES, BEXAR COUNTY PRETRIAL SERVICES DIRECTOR MIKE LOZITO,** Individually and as an agent and/or employee of Bexar County, **"UNKNOWN/UNNAMED" OFFICERS/ EMPLOYEES OF THE BEXAR COUNTY PRETRIAL SERVICES, SAPD OFFICER MICHAEL KOHLLEPPEL,** Individually and as an agent and/or employee of San Antonio Police Department**, CITY OF SAN ANTONIO,** | § § § § § § | |
| **Defendants.** | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** MICHELLE DOTSON, BRIDGETTE LOTT, REGINOLD STEPHENS Individually, and RONALD DOTSON, Individually and as the Representative for the Estate of Janice Dotson-Stephens (Plaintiff-Decedent), hereinafter called "Plaintiffs", complaining of and about BEXAR COUNTY, SHERIFF JAVIER SALAZAR, "Unknown/Unnamed" Officers/Employees of Bexar County Sheriff's Office, BEXAR COUNTY HOSPITAL DISTRICT d/b/a UNIVERSITY HEALTH SYSTEMS [hereinafter "UHS"], "Unknown/Unnamed" Officers/ Employees Of UHS,  BEXAR COUNTY PRETRIAL SERVICES, PRETRIAL SERVICES DIRECTOR MIKE LOZITO, "Unknown/Unnamed" Officers/Employees Of Bexar County Pretrial Services, the CITY OF SAN ANTONIO, and SAPD OFFICER MICHAEL KOHLLEPPEL, hereinafter called "Defendants", and for cause of action shows unto the Court the following:

### PARTIES AND SERVICE

1.      Plaintiff RONALD DOTSON, son of Plaintiff-Decedent, is an individual and is a resident of Guadalupe County, Texas and brings this suit on behalf of himself and as the personal representative of the Estate of Janice Dotson-Stephens, his deceased mother, also a resident of Bexar County, Texas.

2.      Plaintiff, MICHELLE DOTSON, daughter of Plaintiff-Decedent, is an individual and a resident of the State of Texas.

3.      Plaintiff, BRIDGETTE LOTT, daughter of Plaintiff-Decedent, is an individual and is a resident of the State of Texas.

4.      Plaintiff, REGINOLD STEPHENS, husband of Plaintiff-Decedent, is an individual and is a resident of the State of Texas.

2

5.      As used herein, "Plaintiff(s)" shall include not only named Plaintiffs, but also persons whose claims are being represented by a Plaintiff(s).

6.      Defendant BEXAR COUNTY[1], is a municipal corporation organized under the laws of the State of Texas.  Bexar County Sheriff's Department is a division of Bexar County and operates the Bexar County Jail.  Bexar County may be served with process by serving Nelson Wolff as County  Judge of Bexar County, at 101 W. Nueva, 10th floor, San Antonio, Texas, 78205.  Service of said Defendant as described above can be effected by personal delivery.

7.      Defendant SHERIFF JAVIER SALAZAR is named officially and individually and may be served with process at 200 N Comal, San Antonio, Texas, 78207.  At all times relevant to this cause, he was operating in the course and scope of his agency and/or employment relationship with the Bexar County Sheriff's Office.[2],[3]

8.      Defendant BEXAR COUNTY HOSPITAL DISTRICT D/B/A UNIVERSITY HEALTH SYSTEM[4], may be served with process by serving Dr. Dianna M. Burns-Banks

[1]      "A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public."  Tex. Civ. Prac. & Rem. § 101.0215.
[2]      The  Sheriff is responsible for those incarcerated at his jail and is "the keeper of the county jail," "shall safely keep all prisoners committed to the jail," and "shall continue to exercise supervision and control over the jail." Tex. Local Gov't Code, § 351.041.  It is Sheriff Salazar's responsibility to hold detainees in a manner consistent with their oaths to uphold both the Texas and United States Constitutions.  *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018)
[3]      The Sheriff of a county serves as the jail administrator any time there is a not a person available who satisfies the examination requirements set forth in Tex. Gov't Code, § 511.00905 and "if there is a vacancy … the sheriff shall serve as administrator of the jail until a new administrator is appointed and assumes the position." Tex. Local Gov't Code, § 351.034(d).
[4]      The Texas Supreme Court has held that county hospital districts are political subdivisions of the State authorized by the Texas Legislature to "provide for the establishment of a hospital or hospital system to furnish medical aid and hospital care to indigent and needy persons residing in the district." *Rodriguez v. Bexar Cty*., Civil Action No. SA-18-CV-248-XR, 2018 U.S. Dist. LEXIS 157585 (W.D. Tex. 2018) discussing *Klein v. Hernandez*, 315 S.W.3d 1, 7 (Tex. 2010) (quoting Tex. Health & Safety Code § 281.002(a)).

(secretary of the board), at 1954 E. Houston, San Antonio, Texas, 78202. Service of said Defendant as described above can be effected by personal delivery. The Adult Detention Center website lists clinic, in-patient care, and primary care services as being provided by University Health Systems.[5] Additionally, under the holding in *Rodriguez v. Bexar Cty.,* the Court separated entities for purposes of determining liability. The Court stated that "Bexar County and Bexar County Hospital District d/b/a University Health System ("UHS") are distinct legal entities. Therefore, it must ultimately be determined which entity employed each individual Defendant."[6]

9.      Defendant BEXAR COUNTY PRETRIAL SERVICES, may be served with process by serving Leticia Moreno - Pretrial Services Manager at 207 North Comal #200 San Antonio, Texas, 78207. Service of said Defendant as described above can be effected by personal delivery. According to their public website, Bexar County Pretrial Services describes their mission and purpose is "to support community safety efforts by providing accurate information to the Judicial System for release decisions and structured supervision of defendants while on pretrial status." Additionally, they state their goal is to promote positive defendant change through effective programs and services.[7]

10.      Defendant PRETRIAL SERVICES DIRECTOR MIKE LOZITO[8] is named

---

[5]      "Primary Care Services Provided By:  University Health Systems, Correctional Health Care Services."  https://www.bexar.org/737/Medical-Services

[6]      *Rodriguez v. Bexar Cty.*, 2018 U.S. Dist. LEXIS 157585 (W.D. Tex. September 17, 2018)

[7]      http://home.bexar.org/pretrial/about.html

[8]      "A municipal policymaker is someone who has the responsibility for making law or setting policy in any given area of a local government's business." *Ramirez v. Escajeda*, 298 F. Supp. 3d 933, 942 (W.D. Tex. 2018) citing *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (internal quotation marks omitted) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)). Thus, municipal liability only attaches where "the decisionmaker possesses final authority to establish municipal policy with respect to the action

officially and individually and may be served with process by serving Leticia Moreno – Pretrial Manager at 207 North Comal #200 San Antonio, Texas, 78207.  At all times relevant to this cause, he was operating in the course and scope of his agency and/or employment relationship with Bexar County Pretrial Services.

11.     Defendant SAPD OFFICER MICHAEL KOHLLEPPEL, Badge #1637, is named officially and individually and may be served with process at 315 South Santa Rosa, San Antonio, Texas, 78207.  Service of said Defendant as described above can be effected by personal delivery.  At all times relevant to this cause, he was operating in the course and scope of his agency and/or employment relationship with the San Antonio Police Department/City of San Antonio.

12.     Defendant CITY OF SAN ANTONIO may be served with process by serving Leticia Vacek, City Clerk, at 114 W. Commerce, San Antonio, Texas, 78205.  The Fifth Circuit has consistently held that municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under a civil action for deprivation of rights.[9]

13.     In anticipation of the potential argument by some of the Defendants listed above that they either are not the cause of Plaintiff-Decedent Janice Dotson-Stephens' injuries or they are not the "policymaker" responsible for the creation or implementation of procedures and law relative to this case, Plaintiffs request the court to look to not only Fifth Circuit decisions, but Supreme Court decisions as well.  The *Booth* court discusses in some detail that plaintiffs need not establish proximate causation of their injuries, but rather, only "need only allege an injury that can

---

ordered." *Id*. (internal quotation marks omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)). "Whether an official possesses final policy-making authority for purposes of municipal liability is a question of state and local law." *Id*.
[9] *Burge v. Par. of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999) citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 122 L. Ed. 2d 517, 113 S. Ct. 1160 (1993).

be fairly traced to the actions of a particular defendant."[10]  Regarding whether a particular Defendant is a policymaker for the purposes of establishing liability, Plaintiffs urge the court to look to Texas statutory law and judicial opinions for holding municipalities liable.[11],[12]

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over the claims raised in this Complaint under 42 U.S.C. § 1983, 28 U.S.C. § 1331 and 1343, and the Fourteenth Amendment to the United States Constitution.

15.    Venue is appropriate in the Western District of Texas under 28 U.S.C. § 1391 as Defendants reside, and the acts complained of arose in the Western District of Texas.

---

[10]    *Booth v. Galveston Cty.*, No. 3:18-CV-00104, 2018 U.S. Dist. LEXIS 218967, at *20 (S.D. Tex. 2018) discussing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011), and *Bennett v. Spear*, 520 U.S. 154, 168-69, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997)

[11]    "A municipal policymaker is someone who has the responsibility for making law or setting policy in any given area of a local government's business." *Ramirez v. Escajeda*, 298 F. Supp. 3d 933, 942 (W.D. Tex. 2018) citing *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (internal quotation marks omitted) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)). Thus, municipal liability only attaches where "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id*. (internal quotation marks omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)). "Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law." *Id*.

[12]    "A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." Tex. Civ. Prac. & Rem. § 101.0215.

The  Sheriff is responsible for those incarcerated at his jail and is "the keeper of the county jail," "shall safely keep all prisoners committed to the jail," and "shall continue to exercise supervision and control over the jail." Tex. Local Gov't Code, § 351.041.  It is Sheriff Salazar's responsibility to hold detainees in a manner consistent with their oaths to uphold both the Texas and United States Constitutions.  *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018)

The Sheriff of a county serves as the jail administrator any time there is a not a person available who satisfies the examination requirements set forth in Tex. Gov't Code, § 511.00905 and "if there is a vacancy … the sheriff shall serve as administrator of the jail until a new administrator is appointed and assumes the position." Tex. Local Gov't Code, § 351.034(d).

16.    The subject matter in controversy is within the jurisdictional limits of this court.

17.    Plaintiffs further invoke the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas and seeks recovery under the Wrongful Death and Survival Statutes of the State of Texas as allowed by law.

## FACTUAL ALLEGATIONS

18.    At the time of her death, Plaintiff-Decedent Janice Dotson-Stephens was a pretrial detainee Constitutional purposes.

19.    From as early as July, 1996 through July, 2018, Plaintiff-Decedent had an extensive police record with San Antonio Police Department prior to the arrest at issue, including at least three explicitly identified "mental health disturbance" situations, two of those requiring emergency mental health detentions [Plaintiffs' Complaint Exhibit 1].  Her mental health history should have been readily ascertainable to arresting and booking officers upon simple inquiry.

20.    On or about July 17, 2018, Defendant San Antonio Police Department Officer Michael Kohlleppel was a Police Officer with the San Antonio Police Department.

21.    On or about July 17, 2018, Plaintiff-Decedent Janice Dotson-Stephens, Plaintiff-Decedent, while exhibiting behavior consistent with mental illness, was arrested, processed, and jailed for an allegation of criminal trespass onto private property, a Class B misdemeanor, punishable under Texas law by a fine not to exceed $2,000, a maximum of six (6) months in jail, or both such fine and confinement.[13]

22.    On or about July 17, 2018, Plaintiff-Decedent Janice Dotson-Stephens' estranged husband, Reginold Stephens, resided at the property, Mount Zion Sheltering Arms (an affordable

---

[13]    Tex. Penal Code § 12.22

housing complex for the elderly and disabled), where she was arrested.

23. On or about July 17, 2018, additional SAPD officers, Sergeant Ramirez and Officer Lowery, were present at the scene, interacted with Plaintiff-Decedent Janice Dotson-Stephens, and observed her incoherent and erratic behavior.

24. On or about July 17, 2018, per the police report, Plaintiff-Decedent Janice Dotson-Stephens refused to give arresting Defendant Officer Kohlleppel her name and "then got mad and stated 'If your (sic) going to take me to jail, then take me. Im (sic) not leaving the location because I live here."

25. On or about July 17, 2018, Defendant Officer Michael Kohlleppel advised Plaintiff-Decedent Janice Dotson-Stephens to leave and that she was going to be issued a trespass warning, but instead, arrested her upon her own insistence.

26. On or about July 17, 2018, Defendant Officer Kohlleppel placed Plaintiff-Decedent Janice Dotson-Stephens in handcuffs, Officer Lowery #1556 searched her, and then Officer Kohlleppel transported her to jail to be booked for criminal trespassing.

27. On or about July 17, 2018, Plaintiff-Decedent Janice Dotson-Stephens was processed and jailed at the Bexar County Jail, operated by Defendant Sheriff Javier Salazar and "unknown" jail administrator. The "Arrest & Booking Sheet" and police report indicated she was "homeless."

28. On January 1, 2017, Defendant Sheriff Javier Salazar was sworn into office. Prior to being elected Sheriff, Defendant Salazar served with the San Antonio Police Department for twenty-three (23) years, most recently as their public information officer.

29. On July 24, 2017, seven (7) months after assuming his role as sheriff and almost eighteen (18) months before Plaintiff-Decedent died, Defendant Sheriff Salazar received written

notice from the Texas Commission on Jail Standards outlining the requirements sheriffs must follow to comply with the newly enacted S.B. 1849. ("The Sandra Bland Act")  S.B. 1849 amended Tex. Code Crim. Proc. Art. 16.22 and required compliance by specific dates in 2018, well before the arrest and death of Plaintiff-Decedent Janice Dotson-Stephens.  [Plaintiffs' Compliant Exhibit 2]

30.     The 85th Legislature, amended Acts 2017, chapter 748 and chapter 950 (S.B. 1849) relative to the Tex. Code Crim. Proc. Art. 17.032 - "Release on personal bond of certain defendants with mental illness or intellectual disability."  These changes directly implicate the pretrial recommendations and magistration process of mentally ill defendants.

31.     The Texas Commission on Jail Standards, through the Tex. Admin. Code, dictates the health services required for all Texas jails.  Section 273.5 outlines the responsibilities and requirements of each sheriff/operator in coordination with mental health officials for developing and implementing a mental disabilities/suicide prevention plan including:  training, identification, reviewing, screening, communication, housing, supervision, intervention and emergency treatment, and checking mental health history and background of all inmates admitted.[14]

32.     By law, Defendants were required to "give prisoners the ability to access a mental health professional at the jail through a telemental health service 24 hours a day" and "give prisoners the ability to access a health professional at the jail or through a telehealth service 24 hours-a-day or, if a health professional is unavailable at the jail or through a telehealth service, provide for a prisoner to be transported to access a health professional."[15]

---

[14]     Tex. Admin. Code, tit. 37, part 9, ch. 273, § 273.5
[15]     Tex. Gov't Code, § 511.009(a)(23)(A-B)

33.     According to Bexar County Pretrial Services' website, the role of pretrial intake staff is to:  interview defendants to determine risk, investigate bond applications, make recommendations of conditions to the Judge or Magistrate regarding release on Personal Recognizance Bond (PR Bond), determine eligibility for IDAAS - Indigent Defense Attorney Appointment System, assign a Court Appointed Attorney, and provide information to the public regarding the status of defendants who were interviewed for PR Bond.[16]

34.     On or about July 17, 2018, Bexar County Jail "unknown" employee(s) was a screening officer(s) responsible for screening Plaintiff-Decedent Janice Dotson-Stephens.

35.     Defendant Bexar County Hospital District d/b/a University Health Systems ["UHS"] is responsible for the medical treatment of all inmates at the Bexar County Jail and provided medical and mental health care to Plaintiff-Decedent Janice Dotson-Stephens while she was incarcerated.

36.     On or about July 17, 2018, and at all times relevant through December 14, 2018, the mother of four (4) and grandmother of ten (10), spent 151 days, more than five (5) months, without seeing the inside of a Bexar County courtroom or appearing before a Bexar County judge for an allegation of a Class B misdemeanor.

37. A class B misdemeanor is punishable under Texas law by a fine not to exceed $2,000, a maximum of six (6) months in jail, or both such fine and confinement.[17]

38.     On or about July 17, 2018, and at all times relevant through December 14, 2018 Defendants were aware of the mental health condition of Plaintiff-Decedent Janice Dotson-Stephens.

---

[16]     http://home.bexar.org/pretrial/INTAKE.html
[17]     Tex. Penal Code § 12.22

39.     On or about July 17, 2018, and at all times relevant though December 14, 2018, Defendants at the Bear County Jail were required to offer Plaintiff-Decedent Janice Dotson-Stephens the opportunity to bond out.  Bond was set at $300.00; however, she was not offered the opportunity for a personal recognizance bond.

40.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Plaintiff-Decedent Janice Dotson-Stephens remained in jail waiting on either the case to resolve itself, or for a relative to pay the $300 bond for her release by the Bexar County Magistrate, presumably with assistance and/or recommendations by Bexar County Pretrial Services.

41.     On or about July 17, 2018 and all times relevant through December 14, 2018, Defendants failed to correctly inform Plaintiff-Decedent Janice Dotson-Stephens' family of her incarceration at Bexar County Jail when they called to inquire about her presence at the facility.

42.     From July 17, 2018 to August 4, 2018, Plaintiff-Decedent Janice Dotson-Stephens refused interviews on six (6) different occasions, waived hearing, and refused to go to court … additional indicators of her mental illness and decline in mental health.

43.     From July 17, 2018 to August 8, 2018, for eighteen (18) days, Plaintiff-Decedent Janice Dotson-Stephens was not appointed an attorney by the court, even though she elected a court appointed attorney immediately as evidenced by the "Magistrate Warning" on the day of her arrest, July 17, 2018.  [Plaintiffs' Complaint Exhibit 3]

44.     On August 8, 2018, eighteen (18) days after her arrest and incarceration, Plaintiff-Decedent Janice Dotson-Stephens was appointed an attorney.

45.     From August 8, 2018 to December 14, 2018, it is unknown whether Plaintiff-Decedent Janice Dotson-Stephens ever met with her court appointed attorney.

46.     From July 17, 2018 to December 14, 2018, Plaintiff-Decedent Janice Dotson-Stephens was not afforded the opportunity or benefit she was entitled to from the Bexar County Public Defender's Office (BCPDO) Mental Health Defender Program to assist her as a defendant with mental illness.

47.     On August 17, 2018, Plaintiff-Decedent Janice Dotson-Stephens refused to go to jail court, another indication of her deteriorating mental capacity and mental illness.

48.     On August 20, 2018, thirty-four (34) days after her arrest, a "UHS" psychiatrist wrote to the court that Plaintiff-Decedent Janice Dotson-Stephens "may be unable to assist her attorney in the preparation of her defense due to mental illness and may require a competency evaluation." [Plaintiffs' Complaint Exhibit 4]

49.     It was not until August 27, 2018, that the court ordered a psychological evaluation for competency through "UHS", forty (40) days after Plaintiff-Decedent Janice Dotson-Stephens was arrested. [Plaintiffs' Complaint Exhibit 5]

50.     On or about July 17, 2018, and at all times relevant through December 14, 2018, it is unknown whether more than a cursory psychological evaluation was performed. If an evaluation was performed, it was either misplaced or mishandled and is not a part of Plaintiff-Decedent's jail records.

51.     On September 5, the court ordered the offense report be forwarded to University Health Systems, the infirmary at the Bexar County Jail.

52.     On or about December 14, 2018, Plaintiff-Decedent Janice Dotson-Stephens died while she was confined in the Bexar County Jail while awaiting a psychological evaluation that was ordered by Judge Caruthers on August 27, 2018.

53.     On or about July 17, 2018 and all times relevant through December 14, 2018, Defendants failed to appropriately respond to the mental health needs of Plaintiff-Decedent Janice Dotson-Stephens.

54.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Defendants failed to screen and evaluate Plaintiff-Decedent Janice Dotson-Stephens on an ongoing basis.

55.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Defendants failed to keep Plaintiff-Decedent Janice Dotson-Stephens safe and free from physical and psychological injury, harm, or death.

56.     On or about April 5, 2018, Assistant Bexar County Jail administrator, Laura Balditt abruptly tendered her intent of retirement from the Sheriff's Office, hours after Defendant Sheriff Salazar held a press conference discussing a thwarted jail escape attempt.

57.     On or about April 6, 2018, Ruben Vela was promoted to Deputy Chief and interim Assistant Jail Administrator at the Bexar County Adult Detention Center Facility.

58.     On or about September 28, 2018, Assistant Chief Deputy and Jail Administrator, Bobby Hogeland, resigned abruptly following reports indicating possible inappropriate expenditures.  Bexar County Judge Nelson Wolff was quoted as saying, "[h]e was a nice guy but he didn't have any administrative experience," he said. "[Hogeland] came straight from the U.S. Marshal's Service."[18] [Plaintiffs' Complaint Exhibit 6]

59.     From September 28, 2018 to December 21, 2018, Ruben Vela acted as interim jail administrator and the position for a permanent jail administrator, all the while the position for

---

[18]     https://www.mysanantonio.com/news/local/article/BCSO-chief-deputy-resigns-abruptly-13265944.php

permanent jail administrator remained vacant and the job had not been posted as an open position by Defendant Sheriff Javier Salazar. Coincidentally, it was not until December 21, 2018 that the county posted the position which was the same date this action was filed. [Plaintiffs' Complaint Exhibit 7]

60.     On or about January 26, 2019, Defendant Sheriff Javier Salazar suspended Deputy Chief Ruben Vela and appointed Captain Avery Walker to assume responsibility over the jail after an inmate was released without a required electronic monitor.

61.     As of February 22, 2019, Bexar County Jail was listed on the Texas Commission on Jail Standards website as having been found in non-compliance with Texas Minimum Jail Standards as codified in the Texas Administrative Code, Title 37, Part 9 [Plaintiffs' Complaint Exhibit 8]. Counties are listed upon verification that the county has received the official notice of non-compliance, and counties removed immediately upon attaining compliance. (As of the date of this amended Complaint, Bexar County Jail was still listed in non-compliance.)[19]

62.     From January 19, 2018 through February 22, 2019, Bexar County Jail had five (5) deaths, one (1) suicide, and four (4) escapes in a twelve (12) month inspection period [Plaintiffs' Complaint Exhibit 9].

63.     From January 19, 2018 through February 22, 2019, Bexar County Jail failed to meet the statutory standards required by the Texas Commission on Jail Standards, including multiple violations of Tex. Admin. Code, tit. 37, § 267, 271, 273, 275, and 285 [Plaintiffs' Complaint Exhibit 9].

---

[19]     https://www.tcjs.state.tx.us/index.php?linkID=340

64. Bexar County Judge Nelson Wolff commented about the events that lead to Janice Dotson-Stephens death, "A lot of incompetence. A lot of breakdown. She never should have been there." [Plaintiffs' Complaint Exhibit 10]

## CLAIMS

### COUNT I
### VIOLATIONS OF 42 U.S.C. § 1983
### FOR DEPRIVATION OF CIVIL RIGHTS

65.     As a direct and proximate result of the foregoing, Defendants deprived Plaintiff-Decedent Janice Dotson-Stephens of her rights and privileges as a citizen of the United States, and Defendants caused her to suffer injury and death, of which caused the general damages requested by Plaintiffs in an amount not in excess of the applicable jurisdictional limit, to be proven at trial.  Under 42 U.S.C. §1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." In the events alleged above, Defendants acted contrary to law, and intentionally and unreasonably deprived Janice Dotson-Stephens of her privileges, and immunities secured by 42 U.S.C. §1983 in a willful and wanton fashion and they were deliberately indifferent.

## A.  DEFENDANTS VIOLATED PLAINTIFF-DECEDENT JANICE DOTSON-STEPHENS' TEXAS CONSTITUTIONAL RIGHT AS A MISDEMEANOR INDIGENT DETAINEE SUFFERING FROM MENTAL ILLNESS

66.     The Texas Constitution guarantees the rights of the accused in criminal prosecutions including, "no person shall be held to answer for a criminal offense, unless on an

indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary."[20]  Additionally, Art. I, § 10 was designed to prevent oppressive pretrial incarceration, minimize the anxiety and concern of an accused, and limit the possibility that a defense will be impaired.[21]  Courts have tended to construe an "oppressive pretrial incarceration" as a period of one year or more; however here, Plaintiff-Decedent Janice Dotson-Stephens was a pretrial detainee suffering from known mental illness, did not have the ability to pay $300 bail for over five months, and subsequently died while awaiting a court-ordered psychological evaluation … for an allegation of criminal trespass onto private property, a Class B misdemeanor, punishable under Texas law by a fine not to exceed $2,000, a maximum of six (6) months in jail, or both such fine and confinement.[22]

67.     Although State courts are required to analyze federal constitutional speedy-trial claims by weighing and balancing the four *Barker v. Wingo* factors, there is no set time element that triggers the *Barker* analysis.[23]  Courts should weigh the strength of each of the *Barker* factors against the relative weights in light of the conduct of the prosecution and defendant.[24]  Plaintiffs assert that the totality of the circumstances here are sufficient to show Plaintiff-Decedent Janice Dotson-Stephens was denied her basic fundamental right to liberty due to the fact she could not rationally assert her rights because of her mental illness.  Defendants should have investigated, evaluated, and appointed counsel immediately in accordance with Texas law and because of their failures, Plaintiffs and Plaintiff-Decedent suffered unnecessarily through her incarceration and subsequent death. Had Defendants complied with the required departmental

---

[20]      Tex. Const. Art. I, § 10
[21]      *Comeaux v. State*, 413 S.W.3d 176 (Tex. App.—Beaumont 2013)
[22]      Tex. Penal Code § 12.22
[23]      *Cantu v. State*, 253 S.W.3d 273 (Tex. Crim. App. 2008)
[24]      *Id*.

procedures, regulations, and Texas law[25], they would have immediately identified Plaintiff-Decedent's history of mental illness and presumably sought the treatment and medical help she desperately needed.  The Fifth Circuit has explained that deliberate indifference means that "it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[26]

68.     Additionally, the Texas Constitution protects criminal defendants against unreasonable bail, specifically, "[a]ll prisoners shall be bailable by sufficient sureties, unless for capital offenses."[27]  The seminal *ODonnell v. Harris County*. case (discussed at length below) emphasized this point in their holding stating, "when the accused is indigent, setting a secured bail will, in most cases, have the same effect as a detention order. Accordingly, such decisions must reflect a careful weighing of the individualized factors set forth by both the state Code of Criminal Procedure and Local Rules."[28]  Unfortunately for Plaintiff-Decedent Janice Dotson-Stephens, her mental illness and mental health history exacerbated the oppressiveness of her extended incarceration.  [Plaintiffs' Complaint Exhibit 10]  Because the Defendants, acting in concert, ignored mandatory procedures and Texas law, they are responsible for the violations of her constitutional rights.

---

[25]     *See* Tex. Local Gov't Code, § 351.041, Tex. Gov't Code § 511.00905, § 511.009(a)(23)(A-B), Tex. Admin. Code, tit. 37, § 273.5, § 267.1(b)(3), § 273.4(a), § 273.5(a)(1), § 273.5(a)(5), § 275.1, § 275.2, § 275.7, § 285.1, Tex. Code Crim. Proc. Art. 16.22, Art. 16.23, Art. 17.032
[26]     *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)
[27]     Tex. Const. Art. I, § 11
[28]     *ODonnell v. Harris County*, 892 F.3d 147, 158 (5th Cir. 2018)

**B. DEFENDANTS VIOLATED PLAINTIFF-DECEDENT JANICE DOTSON-STE-PHENS' FOURTEENTH AMENDMENT DUE PROCESS RIGHTS AS A MISDE-MEANOR INDIGENT DETAINEE SUFFERING FROM MENTAL ILLNESS (42 U.S.C. § 1983)**

69.     The Fifth Circuit in *ODonnell* held that "because indigent misdemeanor arrestees were unable to pay secured bail, which, inter alia, resulted in a deprivation of their most basic liberty interests."[29]  Here, the circumstances of Plaintiff-Decedent Janice Dotson-Stephens' arrest, magistration, and pretrial incarceration for over five months run eerily similar to the issues the court found so repugnant about the Harris County bail system in *ODonnell*.

70.     Similarly, a year earlier in 2017, the Fifth Circuit had analyzed due process violations and fundamental unfairness issues because of arbitrary government actions in pretrial detainee prolonged detentions.[30]  As with *Jauch*, Plaintiff-Decedent Janice Dotson-Stephens' right to procedural due process was squarely implicated in that the court stated prolonged-detention cases rise to the level of a violation of a "protected interest-life, liberty, or property."[31]

71.     As in *Jauch,* Defendant Sheriff Salazar, as established earlier, is responsible for those incarcerated at his jail.  In fact, Texas statutes clearly place the responsibility with the sheriff by law.[32]  The Jauch court did not allow the sheriff there to escape liability because as they explained, "Sheriff Halford is responsible for those incarcerated in his jail, Miss. Code Ann. § 19-25-69, and the capias did not require him to impose the unconstitutional detention policy.

---

[29]     *Id*.
[30]     *Jauch v. Choctaw Cty.*, 874 F.3d 425 (5th Cir. 2017)
[31]     *Id*. citing *Augustine v. Doe*, 740 F.2d 322, 327 (5th Cir. 1984).
[32]     The  Sheriff is responsible for those incarcerated at his jail and is "the keeper of the county jail," "shall safely keep all prisoners committed to the jail," and "shall continue to exercise supervision and control over the jail." Tex. Local Gov't Code, § 351.041. The Sheriff of a county serves as the jail administrator any time there is a not a person available who satisfies the examination requirements set forth in Tex. Gov't Code, § 511.00905 and "if there is a vacancy … the sheriff shall serve as administrator of the jail until a new administrator is appointed and assumes the position."  Tex. Local Gov't Code, § 351.034(d).

Moreover, in an analogous context, the Supreme Court of Mississippi has made clear the responsibility of county sheriffs to hold detainees in a manner consistent with their oaths to uphold the federal and state constitutions: … "[33]  The right at issue here was clearly established and its contours "sufficiently clear" that any reasonable official would understand that the Constitution forbids confining criminal defendants for a prolonged period (five months in this case) prior to bringing them before a judge.[34]

72.     The Fourteenth Amendment's Equal Protection and Due Process Clauses prohibit jailing a person because of her inability to make a monetary payment.  Defendants violated Plaintiff-Decedent's fundamental right to pretrial liberty by keeping her in jail because she could not afford to pay money bail without any inquiry into her ability to pay.  Here, Plaintiff-Decedent's bail experience through Bexar County was similar to Harris County bail practices where the Fifth Circuit found that despite their "formal requirements, in practice, county procedures were dictated by an unwritten custom and practice that was marred by gross inefficiencies, did not achieve any individualized assessment in setting bail, and was incompetent to do so."[35]  The Fifth Circuit has already concluded that "[t]he incarceration of those who cannot [pay money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements."[36]  Plaintiff-Decedent Janice Dotson-Stephen's present claims do not run afoul of *ODonnell* or *Graham*.

---

[33]     *Jauch v. Choctaw Cty.*, 874 F.3d 425 (5th Cir. 2017)

[34]     *Id.* discussing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987)." (p. 16-17)

[35]     *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018)

[36]     *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018) citing *Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (en banc).

73.     In the opinion *Sanders v. City of Houston*[37], "which was not grounded in procedural due process but in the Fourth Amendment, relied on the Supreme Court opinion, *Gerstein*, 420 U.S. 103, 95 S. Ct. 854, 43 L. Ed. 2d 54. Id. at 699. And *Gerstein* was later interpreted as establishing a right to a probable cause hearing within 48 hours. *McLaughlin*, 500 U.S. at 56-57."[38]  No such hearing was had for the Plaintiff-Decedent Janice Dotson-Stephens.

## C.  DEFENDANTS VIOLATED PLAINTIFF-DECEDENT JANICE DOTSON-STE-PHENS' FOURTEENTH AMENDMENT EQUAL PROTECTION RIGHTS (42 U.S.C. § 1983)

74.     Bexar County's bail-setting procedures violate the equal protection clause of the Fourteenth Amendment because they treat otherwise similarly situated misdemeanor arrestees differently based solely on their relative wealth as with Harris County.[39]  The ODonnell court put forth a practical summation of comparing similarly situated detainees:

> In sum, the essence of the district court's equal protection analysis can be boiled down to the following:  take two misdemeanor arrestees who are identical in every way—same charge, same criminal backgrounds, same circumstances, etc.—except that one is wealthy and one is indigent.  Applying the County's current custom and practice, with their lack of individualized assessment and mechanical application of the secured bail schedule, both arrestees would almost certainly receive identical secured bail amounts. One arrestee is able to post bond, and the other is not. As a result, the wealthy arrestee is less likely to plead guilty, more likely to receive a shorter sentence or be acquitted, and less likely to bear the social costs of incarceration. The poor arrestee, by contrast, must bear the brunt of all of these, simply because she has less money than his wealthy counterpart.[40]

The *O'Donnell* court held that this state of affairs violates the equal protection clause.[41]  [Plaintiffs' Complaint Exhibit 11]

---

[37]     *Sanders v. City of Hous.*, 543 F. Supp. 694 (S.D. Tex. 1982)
[38]     *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018)
[39]     *Id.*
[40]     *ODonnell v. Harris County*, 892 F.3d 147 (5th Cir. 2018)
[41]     *Id.*

75.     The Fifth Circuit court further acknowledged in *O'Donnell* that the cited Supreme

Court cases applied to indigents who were already found guilty. But the Fifth Circuit court in

*Rainwater* concluded that the distinction between post-conviction detention targeting indigents

and pretrial detention targeting indigents is one without a difference.[42] They found that, regard-

less of its timing, "imprisonment solely because of indigent status is invidious discrimination and

not constitutionally permissible."[43]  The Fifth Circuit held in 1971  that the pretrial detainment of

"unconvicted misdemeanants" was a "[p]unitive measure [ ] . . . out of harmony with the pre-

sumption of innocence."[44]

76.     Here, like all cases on point reviewed recently, demonstrate that Plaintiff-Dece-

dent Janice Dotson-Stephens' fundamental right to pretrial liberty was violated by keeping her in

jail solely because she cannot afford to pay money bail without providing any inquiry into or

findings concerning her ability to pay.

## D.  DEFENDANTS' UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT (42 U.S.C. § 1983.

77.     This Court discussed at length the bifurcation of Constitutional claims for pretrial

detainees in *Rodriguez v. Bexar Cty.*[45]  "Courts considering constitutional challenges by pretrial

detainees must begin by deciding whether to classify the challenge as an attack on a condition of

confinement or an episodic act or omission."[46]

78.     In the *Rodriguez* opinion, this Court explained that a "challenge to a condition of

confinement" is "a challenge to general conditions, practices, rules, or restrictions of pretrial

---

[42]     *Id*.

[43]     *Id*. citing *Rainwater*, 572 F.2d at 1056 (citing *Williams and Tate*).

[44]     *Anderson v. Nosser*, 438 F.2d 183, 190 (5th Cir. 1971)

[45]     *Rodriguez v. Bexar Cty.*, 2018 U.S. Dist. LEXIS 157585 (W.D. Tex. September 17, 2018) citing *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999).

[46]     *Id*.

confinement, and the constitutional issue is whether the condition is reasonably related to a legitimate governmental objective."[47]

79.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Defendants violated multiple sections of Article 17.032 of the Texas Code of Criminal Procedure, "Release on personal bond of certain defendants with mental illness or intellectual disability" by not releasing Plaintiff-Decedent Janice Dotson-Stephens on personal bond or requiring her to submit to outpatient or inpatient mental health treatment as required.[48]

80.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Defendants violated Article 16.22 of the Texas Code of Criminal Procedure, for "Early Identification of Defendant Suspected Having Mental Illness or Intellectual Disability" by failing to follow the mandatory procedures for magistration timeframes, prisoner access to mental health professionals, continuity of prescription medication requirements, mandatory training, and reporting requirements for mentally ill defendants.[49]

81.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Defendants violated Art. 16.23 of the Tex. Code Crim. Proc., "Diversion of Persons Suffering Mental Health Crisis or Substance Abuse Issue" by failing to make a good faith effort to divert Plaintiff-Decedent Janice Dotson-Stephens to a proper treatment center in the agency's jurisdiction as required.

---

[47]     *Rodriguez v. Bexar Cty.*, 2018 U.S. Dist. LEXIS 157585 (W.D. Tex. September 17, 2018) discussing *Estate of Henson v. Wichita Cty.*, Tex., 795 F.3d 456, 462 (5th Cir. 2015).

[48]     Tex. Code Crim. Proc. Art. 17.032(b-c)

[49]     Tex. Code Crim. Proc. Art. 16.22(a)(1) – "Not later than 12 hours after the sheriff or municipal jailer having custody of a defendant … reasonable cause to believe that the defendant has a mental illness or is a person with intellectual disability, the sheriff or municipal jailer shall provide written or electronic notice to the magistrate."  Art. 16.22(a)(3) – magistrate was required to order Dotson to submit to an examination within "a reasonable period not to exceed 72 hours."

82.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Defendants violated § 273.5 of the Texas Administrative Code, "Mental Disabilities/Suicide Prevention Plan" (adopted to be effective December 20, 1994, last revision 2018) requiring staff training, creating and following procedures for intake screening to identify mental illness (in compliance with Tex. Code Crim. Proc. Art. 16.22), adequately providing for supervision, and verifying Plaintiff-Decedent Janice Dotson-Stephens had previously received mental healthcare at intake as required.

83.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Defendants violated multiple "General Duties" required under § 511.009 of the Texas Government Code, examples include:  failing to "report to the Texas Correctional Office on Offenders with Medical or Mental Impairments on a jail's compliance with Article 16.22, Code of Criminal Procedure,"[50] and failing to ensure the jail adopted "reasonable rules and procedures to ensure the safety of prisoners, including rules and procedures that require a county jail to: give prisoners the ability to access a mental health professional at the jail through a telemental health service 24 hours-a-day."[51]

84.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Defendants violated the Administrator responsibilities as laid out in § 353.034 of the Texas Government Code, "County Jail Facilities" by failing to provide adequate safety of Plaintiff-Decedent Janice Dotson-Stephens nor providing proper supervision and control over the jail as required under § 351.041.

---

[50]     Tex. Gov't Code, tit. 4, § 511.09(a)(17)
[51]     Tex. Gov't Code, § 511.09(a)(23)(A)

85.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Defendants violated the "Reporting Requirements" under Texas Senate Bill 1326 (effective September 1, 2017) by failing to follow procedures regarding criminal defendants who are or may be persons with a mental illness or an intellectual disability and by not obtaining a written assessment ordered by the magistrate and completed by the local MH/IDD authority or another qualified expert.

86.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Defendants with Bexar County Pretrial Services were responsible for interviewing defendants to determine risk, making recommendations to the judge or magistrate regarding release on PR bonds, determining eligibility and assigning court appointed attorneys through the IDAAS (Indigent Defense Attorney Appointment System), and providing information to the judicial system for release decisions and structured supervision of defendants while on pretrial status.

87.     On or about July 17, 2018, and at all times relevant through December 14, 2018, Bexar County Jail failed to meet minimum statutory standards required by the Texas Commission on Jail Standards and were cited for multiple violations of Tex. Admin. Code, Title 37. Specifically, the "Annual Report" for calendar year 2018 [Plaintiffs' Complaint Exhibit 9], found multiple deficiencies and Defendants were advised to "promptly initiate and complete appropriate corrective measures."  These deficiencies included, but not limited to, findings such as:

- "Inmate classification paperwork and staff interviews indicated that jail staff routinely exceed custody reassessments are required.  One file exceeded the 90-day limit by 27 days."[52]
- "The administration has employed and authorized civilian employees to perform duties of health personnel or trained book in officers which is a violation of minimum jail standards."[53]

---

[52]     Tex. Admin. Code, Title 37, § 267.1(b)(3)
[53]     Tex. Admin. Code, Title 37, § 273.4(a)

- "The administration was unable to provide training records to confirm that detention officers received suicide prevention training in accordance with the approved operational plans."[54]

- "Observation logs indicated that jail staff exceeded the required face-to-face 15 minute observations on a continual basis in accordance with the jails [sic] own approved operational plan."[55]

- "Observation logs indicated that jail staff exceeded the required face-to-face 60 minute observations on a continual basis by as few as 1 minute up to 126 minutes."[56]

- "The administration has employed and authorized civilian employees to perform duties of licensed jailers. These civilian employees are not licensed as jailers by TCOLE as required."[57]

- "The inspection team was unable to verify, through maintained documentation, that recreation is being offered to inmates at least 3 days per week for 1 hours as required by minimum jail standards."[58]

88.    In sum, the multiple failures by the Defendants responsible for Bexar County Jail to maintain minimum standards along with the evidence of intentional non-compliance demonstrate a pervasive pattern and practice of obfuscation of duty to protect and keep detainees safe during their incarceration. More disturbing and on point to the issues in this case is the blatant disregard for the policies and procedures required for mental health by: the lack of training, lack of reassessing inmate classification, employing unlicensed civilian employees over critical screening intake areas, and intentional circumvention of systems by employees to skip areas of required fields in the grievance tracking system. [Plaintiffs' Complaint Exhibit 9]

---

[54]    Tex. Admin. Code, Title 37, § 273.5(a)(1)
[55]    Tex. Admin. Code, Title 37, § 273.5(a)(5)
[56]    Tex. Admin. Code, Title 37, § 275.1
[57]    Tex. Admin. Code, Title 37, § 275.2 & § 275.7
[58]    Tex. Admin. Code, Title 37, § 285.1

## E. DEFENDANTS' UNCONSTITUTIONAL EPISODIC ACTS AND OMISSIONS (42 U.S.C. § 1983)

89.     An episodic-acts-or-omissions claim, in contrast to a "conditions of confinement" claim, faults specific officials for their acts or omissions.[59] Here, because the individually named Defendants acted with subjective deliberate indifference and because there was a pattern and practice of objective indifference to Plaintiff-Decedent Janice Dotson-Stephens' constitutional rights, the Defendant entities are also liable for the § 1983 violations.[60] Further, to restate the Fifth Circuit's explanation of deliberate indifference, "it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."[61]

90.     When an official has "subjective knowledge of a substantial risk of serious harm" to the detainee and responds to that risk with deliberate indifference, a pretrial detainee's constitutional rights are violated.[62] The Court states, "[i]n other words, the official must know of and disregard an excessive risk to inmate health or safety."[63] The multiple per se violations of Texas statutes as well as multiple examples of non-compliance with department and agency guidelines demonstrate Defendants knew of the substantial risk of serious harm to Plaintiff-Decedent Janice Dotson-Stephens, and likely other similarly situated detainees, and chose to disregard that risk, whether intentionally or through gross negligence.

91.     On or about July 17, 2018, Defendant San Antonio Police Officer Kohlleppel, failed to "carefully evaluate individuals involved in a mental health crisis and determine the best

---

[59]     *Rodriguez v. Bexar Cty.*, 2018 U.S. Dist. LEXIS 157585 (W.D. Tex. September 17, 2018) discussing *Estate of Henson v. Wichita Cty.*, Tex., 795 F.3d 456, 462 (5th Cir. 2015).
[60]     *See Id.* discussing *Sanchez v. Young Cty.*, Tex., 866 F.3d 274, 279 (5th Cir. 2017).
[61]     *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992)
[62]     *See Id.* discussing *Estate of Henson*, 795 F.3d at 463.
[63]     *Id.*

course of action to take in order to resolve the situation" as required by the guidelines established in the San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.02(B),* and GM Procedure 802, *Unusual Occurrences and Critical Incidents*.  [Plaintiffs' Complaint Exhibit 12]

92.     On or about July 17, 2018, Defendant San Antonio Police Officer Kohlleppel, failed "to recognize symptoms which may indicate the existence of mental illness" as required by the guidelines established in the San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.04(A)*.  [Plaintiffs' Complaint Exhibit 12]

93.     On or about July 17, 2018, Defendant San Antonio Police Officer Kohlleppel, failed to "determine the best course of action to be taken, including the need for Emergency Medical Services (EMS) or Warrantless Emergency Detention" as required by the guidelines established in the San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.07(A)*. [Plaintiffs' Complaint Exhibit 12]

94.     On or about July 17, 2018, Defendant San Antonio Police Officer Kohlleppel, failed to follow the procedure whereby "any medication being taken by the individual should be transported with the individual and released to the appropriate medical or detention personnel (this shall be documented in the report)" as required by the guidelines established in the San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.07(F)*.  [Plaintiffs' Complaint Exhibit 12]

95.     On or about July 17, 2018, Defendant San Antonio Police Officer Kohlleppel, failed to maintain a "close and constant visual observation of the person experiencing a mental health crisis situation" and interview Plaintiff-Decedent Janice Dotson-Stephens or any relatives, friends, neighbors, or other associated with the situation since she was experiencing a mental

health crisis situation as required by the guidelines established in the San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.07(G)(1-2)*. [Plaintiffs' Complaint Exhibit 12]

96. On or about July 17, 2018, Defendant San Antonio Police Officer Kohlleppel, failed to evaluate Plaintiff-Decedent Janice Dotson-Stephens for mental illness and the crisis situation and failed to follow any of the numerous options available to them per the guidelines established in the San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.08 (Courses of Action)*. [Plaintiffs' Complaint Exhibit 12]

97. On or about July 17, 2018, according to the San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.08(B-F)*, Defendant San Antonio Police Officer Kohlleppel had the authority to detain Plaintiff-Decedent Janice Dotson-Stephens under a "Warrantless Emergency Detention" rather than arresting her under the SAPD department guidelines. [Plaintiffs' Complaint Exhibit 12]

98. On or about July 17, 2018, according to the "Booking Process" section of the San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.08(E)(2-4)*, Defendants failed to immediately notify Central Magistration personnel that Plaintiff-Decedent Janice Dotson-Stephens was suspected of mental illness, notate the magistrate's intake slip, and transport her medication with her to the jail. [Plaintiffs' Complaint Exhibit 12]

99. On or about July 17, 2018, Defendant San Antonio Police Officer Kohlleppel, failed to evaluate Plaintiff-Decedent Janice Dotson-Stephens for mental illness and the crisis, failed to document and report findings and any actions taken in their respective reports, and then forward those reports to the Mental Health Detail per the guidelines established in the San

Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.09*[Plaintiffs' Complaint Exhibit 12]

100.    Without discovery and copies of the Defendants personnel files, it is unknown whether they attended and received the required training on handling mentally ill persons in accordance with the San Antonio Police Department General Manual, Procedure 611 – *Mentally Ill Persons, §.12* [Plaintiffs' Complaint Exhibit 12]

101.    Without discovery and training records from the City of San Antonio and San Antonio Police Department, it is unclear whether the city had an adequate training program in relation to the tasks the officers must perform relative to mentally ill persons.[64]  The egregious and numerous failings on the part of the city and the officers in handling the arrest of Plaintiff-Decedent and her subsequent extended incarceration leading to her death implicates the entire San Antonio Police Department/City of San Antonio for the violations of her Constitutional rights.

102.    The information and evidence obtained thus far demonstrate a series of either willful violations or deliberate indifference of the multiple laws and procedures in place that were enacted to protect Plaintiff-Defendant Janice Dotson-Stephens, as well as many other potentially similarly situated pretrial detainees in Bexar County.  By simply adopting procedures to present a positive public image of care and concern for indigent, mentally ill defendants/detainees yet turning a blind eye to the pervasive willful violations by almost every department involved in arrest, intake, medical care, mental healthcare, and incarceration not only creates public distrust in the judicial system, but here, the consequences to Janice Dotson-Stephens and her family were not only unconstitutional, they were unforgivable.

---

[64]    *Ramirez v. Escajeda*, 298 F. Supp. 3d 933 (W.D. Tex. 2018)

## COUNT II
## VIOLATIONS OF TEXAS CIVIL PRACTICE AND
## REMEDIES CODE §§ 71.002-.004 - WRONGFUL DEATH

103.    The claims and causes of action for wrongful death of Plaintiff-Decedent Janice

Dotson-Stephens are brought by her husband and children, pursuant to Texas Civil Practice and

Remedies Code sections 71.002.  A person is liable for damages arising from an injury that

causes an individual's death if the injury was caused by the person's or his agent's or servant's

wrongful act, neglect, carelessness, unskillfulness, or default.[65]

104.    Plaintiffs allege claims of wrongful death and injuries sustained by Plaintiff-Dece-

dent Janice Dotson-Stephens and numerous negligence per se for violations of S.B. No 1849

(Sandra Bland Act), Tex. Local Gov't Code, § 351.041, Tex. Gov't Code § 511.00905, §

511.009(a)(23)(A-B), Tex. Admin. Code, tit. 37, § 273.5, § 267.1(b)(3), § 273.4(a), §

273.5(a)(1), § 273.5(a)(5), § 275.1, § 275.2, § 275.7, § 285.1, Tex. Code Crim. Proc. Art. 16.22,

Art. 16.23, Art. 17.032.  Each of these statutes dictate specific procedures and protections that

Defendants were required to follow in order to prevent the particular violations that Plaintiff-De-

cedent Janice Dotson-Stephens suffered because of the failure to follow the law designed to pro-

tect her.

## COUNT III
## VIOLATIONS OF TEXAS CIVIL PRACTICE AND
## REMEDIES CODE §71.021 - SURVIVAL ACT

105.    The claims and causes of action for injuries to health, reputation, and person sus-

tained by Plaintiff-Decedent Janice Dotson-Stephens are brought in this action pursuant to the

Survival Act, Texas Civil Practice and Remedies Code section 71.021.  A cause of action for

personal injury to the health, reputation, or person of an injured person does not abate because of

---

[65]    Tex. Civ. Prac. & Rem. Code § 71.002

30

the death of the injured person or because of the death of a person liable for the injury. A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person. The action survives against the liable person and the person's legal representatives. The suit may be instituted and prosecuted as if the liable person were alive.[66]

106. Plaintiffs incorporate by reference the allegations in the facts section in the above.

## REQUEST FOR DISCOVERY PRIOR TO GRANTING POTENTIAL 12(B)(6) OR 12(C) MOTIONS

107. Because of the limited evidence available to Plaintiffs at this time, we would ask the court to withhold any 12(b)(6) or 12(c) rulings until Plaintiffs have had an opportunity to conference with Defendants and receive at least limited discovery to determine the identities of the "Unknown/Unnamed" Employees/Officers liable for the numerous failures which led to the unconstitutional violations against Plaintiff-Decedent Janice Dotson-Stephens.

## DAMAGES FOR PLAINTIFFS

108. Defendants are jointly and severally liable for the wrongs complained herein, either by virtue of direct participation, acting in concert or by virtue of encouraging, aiding, abetting, committing, and or ratifying and condoning the commission of the above described acts and/or omissions.

109. Plaintiffs and Plaintiff-Decedent suffered compensatory, special, and punitive damages for the following:

 a. Extreme mental anguish and emotional distress as a result of being held in indefinitely in custody without proper medical and mental health treatment

 b. Violation of Plaintiff-Decedent's civil rights by Defendants

 c. Punitive damages for Defendants' egregious acts and omissions

---

[66] Tex. Civ. Prac. & Rem. Code § 71.021.

110.    Plaintiffs request and are entitled to attorney's fees and court costs for litigation of this matter. And all other relief plaintiffs are entitled to under the law.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, RONALD DOTSON, individually and as the personal representative of Plaintiff-Decedent Janice Dotson-Stephens, MICHELLE DOTSON, BRIDGETTE LOTT and REGINOLD STEPHENS, respectfully pray that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiffs against Defendants, jointly and severally, for damages in an amount within the jurisdictional limits of the Court; together with pre-judgment interest at the maximum rate allowed by law; post-judgment interest at the legal rate, costs of the court; and such other and further relief to which the Plaintiffs may be entitled at law or in equity within the boundaries of the Tex. Civ. Prac. & Rem. Code § 101.023 (Texas Tort Claims Act.)

Respectfully submitted,

By:  //s// Leslie Sachanowicz
  Leslie Sachanowicz
  Texas Bar No. 17503200
  Email: les.law@hotmail.com
  Tel. (210) 883-8565

  Mary Pietrazek
  Texas Bar No. 24102358
  Email: pzklaw@gmail.com

  702 Donaldson Avenue, Suite 206
  San Antonio, Texas 78201
  Tel. (210) 951-9795
  Fax. (210) 855-2045
  Attorney for Plaintiffs


**PLAINTIFFS HEREBY DEMAND TRIAL BY JURY**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a correct copy of the above foregoing has this the 16th day of March, 2019 been forwarded to

       Robert W. Piatt, III                    VIA E-FILING SERVICES
       Assistant District Attorney
       Bexar County Criminal District Attorney
       101 W. Nueva – Civil Division
       San Antonio, Texas 78205
       Robert.piatt@bexar.org
       Attorney for Bexar County
       And Sheriff Javier Salazar
       Bexar County Pre-Trial Services
       And Mike Lozito

       Mark Kosanovich                     VIA E-FILING SERVICES
       Fitzpatrick & Kosanovich, PC
       P.O. Box 831121
       San Antonio, Texas 78283-1121
       mk@fitzkoslaw.com
       Attorney for City of San Antonio
       And Michael Kohlleppell

       Laura A. Cavaretta                   VIA E-FILING SERVICES
       Cavaretta, Katona & Leighner PLLC
       One Riverwalk Place
       700 N. St. Mary's Street, Suite 1500
       San Antonio, Texas 78205
       cavaretta@ckl-lawyers.com
       Attorney for University Health System